```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ROBIN BONNER,<br><br>         Plaintiff,<br><br>     v.<br><br>STATE OF NEW JERSEY,<br>DEPARTMENT OF LAW AND PUBLIC<br>SAFETY, DIVISION OF STATE<br>POLICE; et al.,<br><br>         Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 10-2684<br>        (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

SHAPIRO & SHAPIRO
By:  Louis Charles Shapiro, Esq.
1063 East Landis Ave
P.O. Box 787
Vineland, NJ 08362-0787
    Counsel for Plaintiff

MORGAN MELHUISH ABRUTYN
By:  Timothy K. Saia, Esq.
651 West Mount Pleasant Ave
Livingston, NJ 07039-1673
    Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiff Robin Bonner initiated this action after being subjected to a pat down search when several New Jersey state police troopers responded to a report of a man pointing a gun at a school bus.[1]  Named as Defendants in this action are the New Jersey Division of State Police; its Superintendent, Colonel

---

    [1]  The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

1

Joseph Ricardo Fuentes; Commander of Troop A, Major Mark Weeks; and several state police troopers.  Pending before the Court is Defendants' Motion for Summary Judgment.

## I.

This action arises out of a pat down search conducted on May 28, 2008 after several troopers from the New Jersey State Police responded to a report of a man pointing a gun at a school bus. (Compl. ¶ 30, 39.)

The troopers arrived with guns drawn at Plaintiff's residence, located at 719 Irving Ave, Bridgeton, NJ, around 8 a.m.[2] (*Id.* ¶ 30.)  Plaintiff was standing behind her husband at the front door. (Pl's dep. at 23.)  The troopers ordered Plaintiff and her husband out of the house and onto the ground in the front yard. (*Id.* at 24.)  Plaintiff did not immediately comply because she was wearing a bra, underwear, and a short housecoat that did not even reach mid-thigh. (*Id.*)  After being ordered again to exit the house and get down on the ground, Plaintiff complied and was patted down. (*Id.*)

Following the pat down, which lasted one to two minutes and did not reveal any weapons, the troopers put their guns away and allowed Plaintiff and her husband to get off the ground. (*Id.* at 25, 36; Pl's answers to interrog. #12.)  At this time,

---

[2] The Court notes that the number and identity of the troopers present at the scene is unclear from the record.

Plaintiff's husband explained that he had a toy pistol with him while his son was boarding the school bus. (*Id.*) Plaintiff was instructed to sit on the front porch while her husband went into the residence with some of the troopers to retrieve the toy pistol. (*Id.*) After confirming that the pistol was a toy, Plaintiff was allowed back into the residence. (*Id.* at 27.) The entire incident, including the completion of paperwork, lasted approximately 20 to 30 minutes. (*Id.* at 28-29.)

As a result of the incident, Plaintiff missed one day of work. (*Id.* at 31.) According to Plaintiff, she was not physically injured by the troopers and she did not seek any type of medical treatment whatsoever. (*Id.* at 15-16, 35.) However, she describes the incident as a "humiliating, degrading experience and emotionally draining." (*Id.* at 34.) Although Plaintiff is unaware of anyone witnessing the incident, she explains:

> I live on a busy street, so anybody going by could have seen that. And, you know, I have a reputation. My job, like I am a public servant, so I mean, that could have cost me my job. And my reputation as far as I do a ministry, a Bible ministry . . . .

(*Id.*)

On May 26, 2010, Plaintiff filed a Complaint in this Court. On November 9, 2011, Defendants moved for summary judgment.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for an unreasonable search and seizure, excessive force, false arrest,

false imprisonment, failure to train and supervisory liability.[3] In addition to a New Jersey constitutional claim for an unreasonable search, Plaintiff asserts state law claims for false imprisonment, intentional infliction of emotional distress, negligence, assault and battery, and civil conspiracy.

Defendants move for summary judgment on all of Plaintiff's claims.  The Court will consider Plaintiff's constitutional claims before turning to the state law claims.

**A.**

**1.**

Defendants move for summary judgment on the federal constitutional claims against the New Jersey Division of State Police, arguing that the claims are barred by the Eleventh Amendment and that the New Jersey Division of State Police is not a person within the meaning of § 1983.  Plaintiff does not oppose dismissal of the federal constitutional claims against the New Jersey Division of State Police.  It is well established that a

---

[3] Section 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

federal cause of action cannot be maintained against a State or its agencies.  *See Hafer v. Melo*, 502 U.S. 21, 30 (1991).  Therefore, the Motion for Summary Judgment will be granted with respect to the federal constitutional claims against the New Jersey Division of State Police.[4]

**2.**

Plaintiff's primary claim is for an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution and the New Jersey Constitution.[5]

The Fourth Amendment prohibits "unreasonable searches and seizures" of "persons, houses, papers and effects."  U.S. Const. Amend. IV.  A seizure occurs only "when [a police officer] by means of physical force or show of authority, has in some way

---

[4] Plaintiff also asserts federal constitutional claims against the individually named Defendants, Colonel Joseph Ricardo Fuentes, Superintendent of State Police; Major Mark Weeks, Commander of Troop A; Sgt. Brown; Trooper Theckston; Trooper Myers; Trooper Camm; Trooper Nocon; Detective McGovern; Trooper Distaso; Lt. Moses A. Knott, III; and Manuel P. Quinoa, Chief Investigator of the Office of the State Police.  These claims are brought against these Defendants in their individual capacity only.  While state officials sued in their official capacity are also not "persons" subject to a suit for damages under § 1983, a state official sued in his individual capacity is a "person" subject to suit under § 1983.  *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985).

[5] Because the analysis of a New Jersey constitutional claim for unreasonable search is similar to the analysis under the Fourth Amendment, no separate analysis will be undertaken for Plaintiff's claims arising under the New Jersey Constitution. *See Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)(citing *Desilets v. Clearview Regional Bd. of Educ.*, 265 N.J. Super. 370, 382 (App. Div. 1993).

restrained the liberty of a citizen." *U.S. v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009).  The "show of authority" test "is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person" in light of all the circumstances.  *California v. Hodari D.*, 499 U.S. 621, 628 (1991).  Circumstances that might indicate seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officers' request might be compelled."  *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980).  It is clear that when troopers with guns drawn ordered Plaintiff out of her house and onto the ground for a pat down search, Plaintiff was seized within the meaning of the Fourth Amendment.

Government search and seizure of an individual only violates the Fourth Amendment if it is unreasonable in light of all the surrounding circumstances.  *Terry v. Ohio*, 392 U.S. 1, 19 (1968).  An officer may conduct a brief investigatory stop and pat down the individual without a warrant "when the officer has reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  The reasonableness of the officers' suspicions is measured by what the officers knew before they conducted their search.  *U.S. v.*

*Valentine*, 232 F.3d 350, 358 (2000).  "The issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others [is] in danger."  *Terry*, 392 U.S. at 27.  This determination is based on the totality of the circumstances in light of the fact that an officer may have the experience and training "to make inferences from and deductions about the cumulative information available" as compared to an untrained person.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Plaintiff contends that being ordered out of the house and subjected to a pat down search was unreasonable because Defendants had no evidence that Plaintiff committed or was about to commit a crime and had no basis to suspect that Plaintiff was armed and dangerous.  (Pl's Opp. at 4.)  Defendants argue that they are entitled to summary judgment because they acted reasonably in conducting a pat down search in response to a 911 report of a man at Plaintiff's residence pointing a gun at a school bus.  (Defs' Br. in Support at 10-11.)

The Court agrees that Defendants' actions were reasonable under the circumstances.  Defendants were responding to a 911 call identifying a man at Plaintiff's residence pointing a gun at a school bus.[6]  When they arrived on the scene, Plaintiff was

---

[6] The Court notes that nowhere is it suggested that the report of Plaintiff's husband pointing a gun at a school bus was inaccurate.

8

standing at the door with her husband.  Furthermore, the entire encounter, including the completion of paperwork, lasted only 20 to 30 minutes.  Given these undisputed facts, Defendants were "warranted in the belief that [their] safety or that of others was in danger," and their actions were reasonably calculated under the circumstances to ensure safety.  *Terry*, 392 U.S. at 27.  Accordingly, Defendants' Motion for Summary Judgment will be granted with respect to Plaintiff's constitutional claims for an unreasonable search and seizure.

To the extent that Plaintiff also asserts constitutional claims for excessive force, false arrest, and false imprisonment summary judgment is granted to Defendants on any such claims.  It is undisputed that Defendants' physical contact with Plaintiff was limited to a pat down search.  (Pl's dep. at 25.)  There is no evidence to suggest that improper force was applied.  It also is undisputed that Plaintiff was not arrested and therefore cannot succeed on a claim for false arrest or false imprisonment.  *See Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)(an arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)("where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.").

**3.**

The Complaint asserts two theories of § 1983 liability against the policymaking Defendants, Fuentes and Weeks: a failure to train, and supervisory liability based on an alleged tolerance of subordinate officers' violations.  (Compl. ¶¶ 23-24.)

The Supreme Court has stated that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).  To establish liability based on a failure to train, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [the] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)(internal quotations and citation omitted).

To establish supervisory liability under § 1983, a plaintiff must establish that a supervisor "participated in violating the plaintiff's rights, or that he directed others to violate them, or that he, as the person in charge . . . , had knowledge of and acquiesced in his subordinates' violations."  *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010)(internal quotations and citation

omitted).

Summary judgment will be granted to Defendants on the claims for supervisory liability and failure to train, as Plaintiff has failed to make out a *prima facie* case. Plaintiff has not come forth with any evidence that the policymaking Defendants participated in the alleged violation of Plaintiff's rights, or directed others to violate her rights or had knowledge of and acquiesced in subordinates' alleged violations. Plaintiff has also failed to present evidence regarding the nature of the specific training that the policymaking Defendants failed to provide or how such failure had a causal nexus with Plaintiff's claims. Accordingly, Defendants' Motion for Summary Judgment with respect to these claims will be granted.

**B.**

Defendants move for summary judgment on Plaintiff's state law claims of false imprisonment, negligence, assault and battery, intentional infliction of emotional distress and conspiracy.[7]

For the reasons articulated in subsection A immediately

---

[7] Defendants argue that Plaintiff has failed to allege "an injury which would pierce the Tort Claims Act threshold" and has "no cognizable damages." (Defs' Reply at 4.) Defendants are not entitled to summary judgment on this basis. Failure to reach the injury threshold of the Tort Claims Act ("TCA") does not bar all causes of action, but merely bars recovery for pain and suffering. *See Beauchamp v. Amedio*, 164 N.J. 111, 119 (2000); *see also DelaCruz v. Borough of Hillsdale*, 183 N.J. 149, 164 (2005).

11

*supra*, the Court will grant summary judgment on Plaintiff's corresponding state law claims of false imprisonment, assault and battery, and negligence.  The Court will also grant summary judgment to Defendants on Plaintiff's conspiracy and intentional infliction of emotional distress claims because Plaintiff has failed to present evidence to support these claims.

A civil conspiracy under New Jersey law is the "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage."  *LoBiondo v. Schwartz*, 199 N.J. 62, 102 (2009) (internal quotations omitted).  Absent any evidence that would permit a reasonable inference that Defendants acted pursuant to an agreement to inflict a wrong against Plaintiff, the civil conspiracy claim fails.

To recover under a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional stress was severe. *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988).  A defendant's conduct must be "'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be

regarded as atrocious, and utterly intolerable in a civilized community.'" *49 Prospect St. Tenants Assoc. v. Sheva Gardens, Inc.*, 227 N.J. Super. 449, 471 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).  Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id.*  Because Defendants' pat down search of Plaintiff does not rise to the level of outrageous behavior that is intolerable in a civil society, Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law.

### IV.

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted as to all of Plaintiff's claims.  An appropriate Order accompanies this Opinion.

Dated: January   27  , 2012

                                               _Joseph E. Irenas_
                                               **JOSEPH E. IRENAS, S.U.S.D.J.**